632 A.2d 930

**William FREY, Appellee,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued July 20, 1993.

Filed Sept. 30, 1993.

Thomas A. McDonnell, Pittsburgh, for appellant.

Carol S. Gross, Pittsburgh, for appellee.

Before CAVANAUGH, BECK and CERCONE, JJ.

CAVANAUGH, Judge.

This case arises from a grant of Partial Judgment on the Pleadings in favor of the appellee William Frey and against appellant State Farm Automobile Insurance Company. It involves State Farm's submission of disputed medical claims for first-party benefits to a Peer Review Organization where the insured's policy and the accident predated the 1990 revision of § 1797 of the Motor Vehicle Financial Responsibility Act which instituted Peer Review. The lower court, relying on *Clairton City School District v. Mary*, 116 Pa.Cmwlth. 376, 541 A.2d 849 (1988), declared that a contract of insurance must be interpreted in accordance with the applicable statute in effect at the time the policy was issued. Since Peer Review was established by revision to 75 Pa.C.S.A. § 1797 subsequent to the effective date of the insured's policy, the court held that State Farm had no right to require the appellee to submit to that process. We reverse, based on the import of 31 Pa.Code Ch. 68, § 1(a) and *Lynn v. Prudential Property and Cas.*, 422 Pa.Super. 479, 619 A.2d 779 (1993).

The appellee, William Frey, was involved in a two automobile accident on November 16, 1987. Frey sustained injuries as a result of the accident and submitted various claims to his own insurance company, State Farm, and the insurance company of the other driver. On February 10, 1989, State Farm paid wage loss benefits to Frey up to the $5,000 policy limits. Subsequently, Frey settled his third party claim with the other driver's insurance company for the policy limits of $50,000. Frey notified State Farm of the settlement offer, and placed the company on notice of his claim for underinsured motorist benefits. Frey at this time asked State Farm to waive subrogation rights against the other driver, which it did on June 19, 1990. On August 31, 1990, Frey settled his underinsured motorist benefits claim with State Farm for $35,000.

Throughout this period, Frey had ongoing medical treatment, all of which State Farm reimbursed. State Farm paid for Frey's medical treatment from November 16, 1987 through September, 1991. In September, 1991, State Farm invoked

the Peer Review process, a procedure to evaluate disputed automobile insurance medical claims established by recent amendments to the Motor Vehicle Financial Responsibility Law effective April 15, 1990.[1] Apparently, notwithstanding the April 15th effective date of the Peer Review system, State Farm arranged for all of Frey's medical records and bills to be reviewed, including those made or submitted before April 15, 1990. A Peer Review Organization ("PRO") subsequently reviewed Frey's medical records and bills and issued a report on February 6, 1992. The report concluded that Frey had reached maximum medical recovery as of January 11, 1988, approximately two months after the accident. State Farm subsequently informed Frey on February 27, 1992, that pursuant to the report's conclusion it would not pay first-party medical benefits after August, 1991. State Farm, however, did not claim that Frey was responsible for reimbursing it for monies already paid to him before September, 1991.

On April 22, 1992, Frey filed suit against State Farm. His complaint contained two counts. Count I sounded in breach of contract. It alleged that since the provisions of the MVFRL in effect at the time of the accident did not provide for Peer Review, and the insurance policy did not call for Peer Review, submission of the appellee's medical claims to a PRO breached the parties' insurance contract. Reasonable attorney's fees, 12% interest on the outstanding bills, court costs and costs of fees were asked for as part of this Count. Count II claimed that State Farm has acted in bad faith pursuant to 42 Pa. C.S.A. § 8371 for the reasons articulated in the above Count. It asks for damages, including punitive, attorney's fees and costs.

State Farm filed an Answer and New Matter on June 3, 1992. It responded to both Counts I and II by asserting that the legislation enacting Peer Review applies to all medical claims incurred subsequent to the legislation's effective date.

1. The Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S.A. § 1701 et seq., was amended by Act of February 7, 1990, P.L. 11 (Act 6). The adoption of the Peer Review procedure was included in this amendment. *See* 75 Pa.C.S.A. § 1797.

Consequently, it asserted, State Farm was perfectly within its rights to submit medical claims, incurred subsequent to April 15, 1990, to a PRO. State Farm's New Matter presented a similar refutation, which Frey responded to on June 18, 1992.

Frey moved for partial judgment on the pleadings on Count I of his complaint. The basis for this motion was that the following supposedly controlling question of law was presented:

> After the payment of medical benefits for over three and one-half years, the payment of $5,000 of wage loss benefits, the waiving of subrogation rights to allow the settlement of a third-party action for the policy limits of $50,000 and the payment of $35,000 of under-insured motorist benefits, does [State Farm] have a right to refuse to pay [Frey's] medical bills beginning in September, 1991 by submitting all of [Frey's] medical bills to peer review for an accident occurring on November 16, 1987 under a policy of insurance issued as of November 16, 1987 when the policy in force at the time contained no provision for peer review?

After State Farm's response, the parties' submitted briefs. The lower court ruled in Frey's favor.

The lower court noted that State Farm admitted in its Answer that (1) State Farm's policy did not contain a Peer Review requirement and (2) law in effect at the time of the accident contained no provision for Peer Review of an insured's medical bills. As a contract of insurance must be interpreted in light of the applicable statute in effect at the time the policy was issued, *see Clairton City School District v. Mary*, 116 Pa.Cmwlth. 376, 541 A.2d 849 (1988), the court felt that State Farm "cannot refuse to pay first party benefits to [Frey] based on the recommendations of a Peer Review Organization when it had no right to require [Frey] to submit himself to [Peer] review." As the Peer Review procedure was required by statute subsequent to the effective date of Frey's policy, he was not required to have any of his medical claims reviewed under it. This appeal followed.

The appellant raises two issues on appeal: (1) whether the Peer Review provisions in 75 Pa.C.S.A. § 1797(b) may be applied to situations where the contract of insurance predated the enactment of the Peer Review statute and (2) whether the trial court erred in granting appellee's Motion for Partial Judgment on the Pleadings where there exist material issues of fact which preclude such a judgment.

Appellant's first argument is that the Peer Review provisions in 75 Pa.C.S.A. § 1797(b) are applicable to certain situations where the contract of insurance predates the enactment of the Peer Review provisions in 75 Pa.C.S.A. § 1797(b). Namely, it asserts that even though an automobile policy predates the revision of § 1797 that treatment rendered subsequent to the enactment of Peer Review is governed by that system of evaluating claims. Although recognizing the principle that a contract of insurance must be interpreted in light of the applicable statute in effect at the time an insurance policy was issued, State Farm believes that the relevant law indicates that the PRO process merely changes the procedure for challenging medical treatment and does not alter any substantive rights. It bolsters this position by reference to 31 Pa.Code Ch. 68, § 1(a) and *Lynn v. Prudential Property and Cas.*, 422 Pa.Super. 479, 619 A.2d 779 (1993) for support.

We find merit with this argument. In *Lynn v. Prudential Property and Cas., supra,* we addressed the retroactive effect of the Peer Review amendments. In *Lynn,* the first of two questions the court addressed was as follows:

1. Whether 75 [Pa.C.S.] [§] 1797(a)(b), effective April 15, 1990 shall not be applied retroactively to a contract in effect prior to the April 15, 1990 [MVFRL] Amendments?

The lower court found this argument possessed merit, as the regulations implementing § 1797 clearly stated that the new amendments were applicable to medical services rendered after April 15, 1990. We agreed with that determination, citing the regulations the court relied on:

[Section 1797] applies to payments by property and casualty insurers for medical treatment or services rendered on or

after April 15, 1990, for the treatment of care of persons covered by automobile insurance, *regardless of when the accident or incident resulting in the need for medical care occurred or when the first claim was filed.*

31 Pa.Code Ch. 68, § 1(a), *as quoted in Lynn, supra,* at 483, 619 A.2d at 781 (emphasis in *Lynn* ). We approvingly referred to the lower court's pronouncement: "[T]hus the critical date which triggers application of § 1797 is the date when the medical services were rendered, on or after April 15, 1990, even if the accident occurred, *or the pertinent policy was issued, prior to April 15, 1990.*" Trial Court Opinion at p. 5, *as quoted in Lynn, supra,* at 483, 619 A.2d at 781 (emphasis in *Lynn* ). We commented that the part of 31 Pa.Code Ch. 68, § 1(a) emphasized *supra* does not refer to the effective date of the amendments in regard to when the pertinent policy was issued. *Lynn, supra,* at 483, 619 A.2d at 781. Thus, for the foregoing reasons, we rejected the rationale of the lower court in the present case, and we accepted an interpretation of the amended § 1797 which focuses on the date of the medical services performed.

█ Admittedly, the *Lynn* decision was decided subsequent to the lower court's consideration of this issue. Notwithstanding, the lower court's Partial Judgment on the Pleadings must be reversed. We have held that an interpretation of a statute in decisional law relates back to the statute's effective date:

In Pennsylvania, decisions changing the law are usually applied to cases pending upon appeal. If such decisions rely upon statutory interpretations, they relate back to the date the particular statute became effective, because they merely interpret existing legislation.

*Fairbanks v. Travelers Insurance Co.,* 337 Pa.Super. 39, 42, 486 A.2d 469, 470–1 (1984), *as quoted in Aletto v. Aletto,* 371 Pa.Super. 230, 235, 537 A.2d 1383, 1385 (1988). Accordingly, the interpretation of the amended version of § 1797 pronounced in *Lynn* relates back to the date that section became effective.

The lower court felt that Partial Judgment on the Pleadings was mandated by the analysis of our sister court in *Clairton City School District v. Mary*, 116 Pa.Cmwlth. 376, 541 A.2d 849 (1988). The court appeared to be relying on *Mary* for the following settled legal proposition:

[i]nsurance contracts are presumed to have been made with reference to substantive law, including applicable statutes in force, and such laws enter into and form a part of the contractual obligation as if actually incorporated into the contract.

*Mary, supra,* at 421, 541 A.2d at 851 (citations omitted). The tenor of the court's reasoning is that since there was no obligation to go to Peer Review in the substantive law at the time of the insurance policy's issuance, Frey does not presently have to submit to Peer Review. We reject the lower court's reasoning for two reasons.

First, Peer Review is not necessarily a change in the substantive law. Even before the institution of Peer Review, an insurer had the right to question whether further treatment of an accident victim was necessary. "[A]n insurer has always been able to challenge the legitimacy and necessity of continued treatment of injuries related to automobile accidents." *Lynn, supra,* 422 Pa.Super. at 486 n. 5, 619 A.2d at 783 n. 5. Viewed in this fashion, Peer Review does not change substantive rights, but merely changes the procedures for challenging medical treatment and expenses. Accordingly, the lower court's reliance on *Mary* is misplaced.

■ Second, "[t]he construction of a statute by an administrative agency is entitled to great weight and may be disregarded only if clearly erroneous." *Terminato v. Pennsylvania National Ins. Co.,* 422 Pa.Super. 92, 100, 618 A.2d 1032, 1036 (1993); *accord Insurance Co. of North America v. W.C.A.B.,* 137 Pa.Cmwlth. 393, 397–98, 586 A.2d 500, 502 (1991); *No. 1 Cochran, Inc. v. Unemp. Comp. Bd. of Rev.,* 135 Pa.Cmwlth. 252, 260, n. 5, 579 A.2d 1386, 1391, n. 5, *app. den.* 527 Pa. 653, 593 A.2d 424 (1990). We find that the interpretation of the amended § 1797 afforded by the administrative

regulations, *supra*, has not been shown to be clearly erroneous. This interpretation is in direct conflict with the lower court's reasoning below and, therefore, we must reverse.

The appellee makes several attempts to distinguish the import of *Lynn* and the Pennsylvania Code section quoted *supra*. We summarize and address these arguments seriatim.

The appellee first contends that what distinguishes this case is State Farm's submission of *all* of Frey's bills to Peer Review, even those which accrued (and were paid) before Peer Review's effective date. He complains that, unlike *Lynn*, State Farm is attempting to question treatment dispensed before the effective date of Peer Review.

We believe this mischaracterizes State Farm's legal position. It is true that State Farm submitted all of Frey's medical bills to a Peer Review Organization, and that the Peer Review Organization found that Frey reached maximum medical recovery on January 18, 1988, a date obviously before Peer Review's effective date. Notwithstanding, the only action taken by State Farm has been to refuse to make further payment of first party medical coverage to Frey after August, 1991. It is difficult to ascertain how submitting *all* of Frey's medical bills and records, including those before the amended § 1797's effective date, has harmed him. Indeed, any fair evaluation of the present need for treatment would necessitate a review of past treatment.[2] State Farm has only denied payment for medical bills *after* Peer Review's effective date. We do not find appellee's argument persuasive.

The appellee next argues that, even if we reject his position that the Peer Review system can not be invoked, that State Farm was dilatory in requesting Peer Review. He notes, *inter alia*, that under the Peer Review procedures established in 31 Pa.Code § 69.52, State Farm was required to make a request for Peer Review within thirty days after receipt of sufficient documentation of a bill.

**2.** That is, of course, unless it is argued that Frey has an interest in avoiding the proper evaluation of the necessity of his claim. However, no such argument is made here, and in any event, we would look with jaundiced eyes if it had been made.

We decline to address appellee's argument. The appellee failed to present this argument to the lower court, and the court granted Partial Judgment on the Pleadings on the rationale articulated (and rejected) *supra.* Moreover, we believe that it would be incongruous with the role of an appellate court to determine if, and to what extent, State Farm was dilatory in requesting Peer Review. To approve the appellee's argument we would have to determine to what extent State Farm possessed sufficient documentation to toll the thirty day period found in 31 Pa.Code § 69.52. The Record is by no means developed enough to make this determination, even if we thought it would be appropriate for this court to make a finding of fact. We leave this argument, if subsequently raised below, for the lower court's future consideration.

The appellant's second argument is that the trial court erred in granting appellee's Motion for Partial Judgment on the Pleadings where there exists material issues of fact which preclude such a judgment. The tenor of this argument is that, even assuming that the Peer Review process does not apply to a person in Frey's position, the ultimate question that still remains is whether Frey's medical expenses are medically necessary. State Farm asserts that it should be afforded relief even under the law predating the § 1797 amendments. Previous law, it argues, allegedly similarly allows an insurer to inquire into the medical necessity of claims.

Having found persuasive appellant's first argument that Peer Review applies to medical treatment rendered after the amended § 1797's effective date, it is unnecessary to delve into a reconstruction of the law prior to Peer Review.[3] We decline to address appellant's second argument in light of our present holding.

For the reasons articulated *supra,* the lower court's grant of Partial Judgment on the Pleadings is reversed.

Order reversed and case remanded.

Jurisdiction is relinquished.

**3.** State Farm has referred us to no statute, regulation, or precedent which supports its position.